FRITZ PIERCE v. STATE.

No. A.-6452.  Opinion Filed May 4, 1929.

(277 Pac. 251.)

C. B. Leedy, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter called the defendant, was charged jointly by information with Ralph Tallman, and was convicted of having in and upon the lands and premises controlled by the said Fritz Pierce six barrels of mash which was fit for manufacturing and distilling intoxicating liquor. Ralph Tallman was acquitted. The defendant Fritz Pierce was convicted, and his punishment left to the court. The court sentenced the defendant to 30 days in jail and to pay a fine of $150 and cost. Motion for new trial was filed, considered, and overruled, and the case appealed to this court.

Before the case was called for trial, the defendant filed a motion to suppress the evidence on the ground that the search warrant described the S. E. ¼ of section 10, township 21 north, of range 26 west I. M., and that defendant had never had possession, control, or ownership of the said land, and that the search warrant described certain land the defendant was in possession of but in mak-

ing the search they did not find anything on the land controlled, owned, or possessed by the defendant, and that the property alleged to have been found by the officers under the search warrant did not belong to him, nor did he have any ownership or know anything about the property being where it was alleged to have been found by the officers. The motion of the defendant to suppress the testimony was overruled, and defendant duly excepted.

The state then called C. L. Thoroughman, who testified he was a federal prohibition officer; he knew Fritz Pierce; that on February 12, 1926, when he went out to assist in making the search of the premises, Mr. Deveney and Hanley accompanied him; when they got to Mr. Pierce's place, they found Mr. Pierce and Mr. Tallman; they began the search immediately after talking with Mr. Pierce and Mr. Tallman. Over the objection of the defendant, he was permitted to state he searched the property described in the search warrant. Witness then testified to the conversation they had had with the defendant Pierce in which the defendant told them to go ahead and search his place, but that he did not have possession of the other property and they would have to get another search warrant to search that. Witness further testified defendant had on rubber boots and looked like he had been wading in the water. An objection was interposed by the defendant, which was overruled and exceptions saved. The witness then attempted to describe the condition of defendant's clothing as to being dirty or clean; then witness testified as to where they found the still, pressure tanks, burner and pitcher pump in the cave with the mash.

The record contains several objections made by the defendant which the court sustained and directed the jury not to consider any of the testimony with reference to the still, boiler, pressure tank, and pitcher pump.

R. E. Deveney was called as a witness, and testified in substance that he went with Mr. Thoroughman the morning they claimed to have searched the premises; that his search warrant described the S. E. ¼ of section 10, township 21 north of range 26 I. M., and the S. E. ¼ of section 11, township 21 north, range 26 west I. M., and witness stated that Mr. Pierce's house was on S. E. ¼ of section 10; they found the six barrels of mash in a cave where they found the other articles. On cross-examination the witness admitted that he did not, of his own knowledge, know whether the barrels of mash they found were in section 10 or 11.

Witness Hanley in substance testified to the same facts as did the other two witnesses, except he did not make any observation as to the tracks on the land; he said there were lots of tracks where the mash was found; there was kind of a trail down that way, but as to where the tracks went he never paid any attention; he claimed that he and Mr. Thoroughman detected the smell of mash when near the house of the defendant; that the defendant had some barrels in the house, in a shed room; he did not notice any smell of mash or any mash in the barrels while Mr. Thoroughman was mashing them up; he saw a number of gallon jugs in the old shed; that there was a pile of broken ones; Mr. Thoroughman had already broken them.

On cross-examination the witness stated he thought the section line between sections 10 and 11 was about 200 yards west, but finally stated he did not know where it was. He stated defendant's house was in section 10; he thought Mr. Pierce's house and the cave were both located on the S. E. ¼ of section 10. Witness further on cross-examination stated in substance that he did not

know whether the cave where they found the mash was in section 10 or not.

Witness C. L. Thoroughman was recalled and asked with reference to the barrels in or near the Pierce house, and stated he destroyed the barrels while there; that there were three in the side room adjoining the house, and he could smell mash in the barrels. The above is in substance the testimony offered by the state. Through the entire testimony the state attempted to produce testimony showing that the place where they found the mash in the cave or dugout was in the same section of land as the home of the defendant. The defendant contended that it was in a subdivision of section 10, and his home was in section 11, and that he did not have anything to do with that land, but that it was in possession and under control of other parties.

The defendant called C. A. Hartman, who testified that he knew where the line was between sections 10 and 11, in township 21 north, range 26 west I.M.; told when the survey was made, and about being present, and testified positively that the home of the defendant was in section 11; that the section line between 10 and 11 was west of the defendant's house; that defendant's house is located in the S. W. ¼ of section 11; that he knew who had been in possession of the S. E. ¼ of section 10 prior to and on that date and subsequent to February, 1926; that Kelly Dennison and George Boyles were the parties that have been in possession of the land; that the parties named had fenced it and were using it for pasture.

Ben Van Camp was called as a witness for the defendant, and he testified he had lived in that county since 1918; that he was well acquainted with the defendant, Fritz Pierce; that the defendant lived on the S. W. ¼ of

section 11; witness further stated that no one lived on the S. W. ¼ of section 10 that he knew of; that he did not know whether Ralph Tallman lived there with the defendant or not.

Ralph Tallman testified, in substance, that he lived with his father and mother at Gage, excepting two days in February, 1926, when he was at the home of Fritz Pierce; that Mr. Pierce had told him he knew where he could get a job; that he was at Mr. Pierce's house on the 12th of February when the officers came; he was never at Mr. Pierce's place before the time mentioned; that on the 11th and 12th of February, Mr. Pierce was working on a car and doing different things around the house; he was arrested on the 12th of February; he went with Mr. Pierce across the creek and north to a place where Mr. Pierce wanted to rent some land; the officers never found anything on the farm that Mr. Pierce lives on; they said they found empty barrels; while the federal officer and Mr. and Mrs. Pierce were standing at the Pierce house, they saw some parties on some high rocks over on section 10 and called the federal officer's attention to it; that he did not have any property of any kind or character located in S. E. ¼ of section 10, nor did he have any right or possession to it; that he did not own or have any interest in any of the things found by the officers over on section 10; that at the time the search was made in S. E. ¼ of section 10, it was controlled by George Boyles and Kelly Dennison. On cross-examination he said it was about 75 yards from Mr. Pierce's house west to the creek. Defendant Pierce told the officers they were welcome to search his place.

Fritz Pierce was called, and testified in substance that on February 12, 1926, he lived about seven miles northwest of Shattuck on the Pete Booth place; "I had a lease

on the house and yard, and had charge of the rest of the place looking after the fences; I had the W. ½ of S. W. ¼ of section 11; it was probably 50 or 75 steps from my house to the section line west; I never had possession or control of any land in section 10; nor any part of it under my control; Kelly Dennison and George Boyles had used it for almost a year; they had used it for the summer 1925, and were still using it on February 12, 1926; I made a few sets of traps during the winter and tried to catch coyotes; I was at home when Mr. Deveney told me he had a search warrant for me, and I told them to put it to me; he wanted to search, and I told him I did not own any of the lands or have possession of any only the house and yard; I had a lease on that; but as far as I was concerned they could search any property I had possession of, and if they wanted to search any further they would have to get a search warrant for the parties having possession, and the federal officer spoke up and said, 'I am a federal officer and I go where I want to,' and I said, 'I have known of people getting fined for going where they wanted to'." The written lease of the defendant was then introduced showing that he had leased the west half of the S. W. ¼ of section 11, township 21 north, range 26 west I. M. Witness then testified that the officers did not find any barrels in his house with mash in them; there were three barrels in his house; he did not know what there would be a chicken trough for, as he did not have any chickens; the barrels were picked up, and one barrel had contained saurkraut, but there had been no sour mash at the house; "there was one seven-gallen jug and two five-gallon jugs in there; there was nothing in them; never had been any whisky in them to my knowledge; I knew nothing about the property they found on the S. W. ¼ of section 10, only what I saw that day; they took me with them to it

when they tore it up and got the property; I knew nothing about the ownership of the mash or barrels they found there or the boiler or pump; I never did own any of it, nor did I have possession of it or put it where it was found; I did not know who put it up there; I was on a deal with old man Booth, about a half mile up the creek north, to rent his place; I had to go three or four miles to get around there in a car, and it was just a quarter of a mile to walk; he lived on the bank of the creek, and I crossed the creek and went up to the house; I put on my rubber boots, and I just got back when the officers came; Ralph Tallman went with me; I had not at any time crossed the creek over to where the officers found the still and mash; the land was what you might call pasture land; it was rolling, rough country, kindly sand hills."

This was, in substance, all the testimony offered by the defendant, and defendant at the close of the testimony demurred to the evidence of the state. The motion was overruled, and defendant duly excepted.

The state then recalled H. N. Hanley, who was asked if he saw any stock in the pasture, and he answered he did not notice any; that some places in the pasture you could not see very far. "After Mr. Tallman was arrested, I asked him what he was doing there, and he said he was out of work and Mr. Pierce told him to come over and stay until he got a job; he complained of not having had any breakfast, that he had just gotten up before we got there." Witness Deveney was recalled by the state, and he testified there was no evidence of stock in the pasture where they found the mash. This is, in substance, all the testimony we deem necessary to set out to arrive at a proper decision in this case.

The defendant insists that the court erred in overruling his motion for a new trial; that the verdict is con-

trary to the evidence and the law; that the court erred in refusing to give the jury instructions 1, 2, and 3 requested by the defendant; that the evidence is wholly insufficient to sustain a conviction for the offense charged; that the court erred in admitting over the objection of the defendant incompetent and prejudicial evidence during the trial; that the judgment of the court is contrary to the law and evidence.

These errors will all be considered together, as they relate to the sufficiency of the evidence to sustain a conviction. Throughout the trial, the defendants Pierce and Tallman being on trial together, the state introduced evidence attempting to show that the defendants Pierce and Tallman were the owners of the mash they claimed they found and attempted to show that the home of defendant Pierce was located in section 10, township 21 north, range 26 west I. M. The defendant Pierce introduced a written lease showing his home was not in section 10 and was in section 11, and that the mash found by the officers was on section 10 quite a distance away from his home across the creek in a pasture which the undisputed testimony shows was in the possession of other parties. The state attempted to show that at the home of the defendant Pierce they found some barrels and jugs. The defendant admitted they were in a room where he kept his plunder, but he says one of the barrels was a saurkraut barrel, and that there was no mash in there, nor had there been any whisky in the barrels, or any of the jugs to his knowledge.

There was nothing found by the officers on the place occupied by the defendant to connect him with the offense in this case, except the statement of the federal officer that he could smell an odor of mash. The federal officer testified that he saw some mash that had been fed to some

chickens in a feed trough. Neither of the other officers testified to this fact. The defendant says there was no mash in the trough nor did he have any chickens to be fed.

The evidence in this case is insufficient to sustain a conviction. At most, it amounts to a suspicion against this defendant. There is no testimony showing that anything found on the premises where the defendant resided, was in any way connected with what was found on another place, which the undisputed facts show was in possession of other parties.

We hold there is not sufficient testimony in this case to convict the defendant.

The case is reversed and remanded.

EDWARDS, P. J., and CHAPPELL, J., concur.